**Ex Parte Craig HALL, Relator.**

**No. D–1820.**

Supreme Court of Texas.

April 7, 1993.

Cynthia Hollingsworth, Beth E. McAllister, Jack Pate and Phil Burleson, Dallas, Dan R. Price, Austin, for relator.

Hayden H. Cooper, Paul T. Fanning, Dallas, for respondent.

## OPINION

HECHT, Justice.

An order to pay spousal and child support may be based upon a contractual obligation, but the order is enforceable by contempt only to the extent that the support awarded is also authorized by the Texas Family Code and Constitution. Relator in this original habeas corpus proceeding was held in contempt for failing to pay support ordered solely on the basis of a prenuptial agreement. The support order was not

based upon statutory authority and thus was not enforceable by contempt. We therefore grant the writ and order relator discharged.

Nearly a year passed after Craig Hall filed for divorce before a hearing commenced on his wife MaryAnna's request for temporary spousal and child support and other temporary relief. Craig and MaryAnna Hall have one minor child, and MaryAnna also has two adult children from a prior marriage. The hearing on temporary orders continued over three days but was never completed. Several weeks later, at a hearing on another motion, the trial court stated that it had concluded that a prenuptial agreement between Hall and his wife was valid. The agreement calls for Craig to pay MaryAnna's living expenses throughout their marriage, as well as the reasonable expenses for maintenance and support of her two children by her former marriage. The trial court noted that an exhibit had been introduced at the unfinished hearing on temporary orders that summarized MaryAnna's living expenses of $23,982.75 per month, including $675 per month for her two adult children. Craig had not had an opportunity to cross-examine MaryAnna about the exhibit at the hearing, but his position was that the expenses shown were exorbitant. While there was no evidence that any of the expenses were equitable and necessary, the trial court concluded that such evidence was unnecessary for spousal support under the prenuptial agreement because that agreement obligates Craig to pay MaryAnna's living expenses whether reasonable or not. The trial court noted that the agreement requires Craig to pay all living expenses during the marriage, limiting these to "reasonable" expenses only when including those paid for MaryAnna's two adult children. Although the exhibit included expenses without any showing that they were reasonable, and despite a warning from MaryAnna's attorney that the exhibit contained amounts for the benefit of the adult children, the trial court determined to use the total in the summary as the basis for awarding temporary support. The court

instructed MaryAnna's counsel to prepare an order reflecting its ruling.

The temporary support order signed by the trial court a few days later on March 7, 1991, stated in pertinent part: "The Court, having read the pleadings, considered the evidence and heard argument of counsel is of the opinion that temporary spousal support and child support should be in the amount of $23,982.75 per month, retroactively from December 1, 1990." The order credited Craig with certain sums and calculated the arrearage to be $23,482.50, although at least some of the credits and calculation, for the period after the conclusion of the evidentiary hearing, could not have been supported by any evidence. The arrearage was to be paid by March 11, and the regular payments by the first of each month. Below and to the left of the court's signature, the order bears the signatures of MaryAnna's attorney and an attorney who represented Craig at one point in the case. Nothing anywhere in the order suggests the purpose or significance of the attorneys' signatures.

MaryAnna later moved the court to hold Craig in contempt for failing to make the payments ordered. After a hearing on MaryAnna's motion, the trial court signed an order on September 17, 1991, finding Craig in contempt for failing to pay the arrearage due March 11 and failing to make the monthly payments from April through August. The court ordered that Craig be jailed until he purged himself of contempt by paying the arrearage, calculated after allowing several credits to be $141,896.25, the fees awarded for handling of the contempt motion, and additional fees conditionally awarded in the event Craig sought habeas corpus relief.

On Craig's petition for habeas corpus, the court of appeals held that the portion of the contempt order awarding attorney fees for any habeas corpus proceedings was void. In all other respects the appeals court upheld the order and refused to discharge Craig. The court of appeals issued a new and specific commitment order, modifying the trial court's orders, which set out the specific terms on which Craig could

purge himself of contempt. —— S.W.2d —— (1993). Craig then filed an application for habeas corpus in this Court. We ordered him released on $5,000 bond pending full consideration of his application. 35 Tex.Sup.Ct.J. 170 (Nov. 27, 1991).

■ As a general rule, a person who willfully disobeys a valid court order is guilty of contempt and subject to imprisonment for a prescribed period and until he complies with the order. *See Ex parte Gorena,* 595 S.W.2d 841 (Tex.1979); *Ex parte Carey,* 704 S.W.2d 13 (Tex.1986) (per curiam); TEX.GOV'T CODE § 21.002; TEX. FAM.CODE §§ 3.58(f) (temporary spousal support), 11.11(h) (temporary child support); 14.40 (child support orders). However, the failure to comply with an order to pay a "debt" is not contempt punishable by imprisonment because of the prohibition of article I, section 18 of the Texas Constitution, which states: "No person shall ever be imprisoned for debt." *See Gorena,* 595 S.W.2d at 845–46; *Ex parte Yates,* 387 S.W.2d 377, 380 (Tex.1965). Such an order may be enforced by other legal processes, such as execution or attachment of property, but not by imprisonment of the adjudicated debtor. The obligation which the law imposes on spouses to support one another and on parents to support their children is not considered a "debt" within Article I, section 18, but a legal duty arising out of the status of the parties. *See* TEX.FAM. CODE § 4.02; *see also Ex parte Birkhead,* 127 Tex. 556, 95 S.W.2d 953, 954–56 (1936); *Cunningham v. Cunningham,* 120 Tex. 491, 40 S.W.2d 46, 49–50 (1931); *Ex parte Davis,* 101 Tex. 607, 111 S.W. 394, 395–96 (1908). An order requiring temporary support payments is enforceable by contempt. TEX.FAM.CODE §§ 3.58(f) (temporary spousal support), 11.11(h) (temporary child support). However, a person may also contract to support his spouse and children, and that obligation, to the extent it exceeds his legal duty, is a debt. The contract may be enforced by an order requiring payment of the support as agreed, but to the extent

the obligation is a debt it is enforceable only by ordinary processes of law. *Ex parte Hatch,* 410 S.W.2d 773, 776 (Tex. 1967); *Mobley v. Mobley,* 221 S.W.2d 565, 567 (Tex.Civ.App.—San Antonio 1949, no writ); *Ex parte Cobble,* 592 S.W.2d 46, 49 (Tex.Civ.App.—Tyler 1979, writ dism'd).

■ The temporary support order in this case was issued solely on the basis of the parties' prenuptial agreement and not on the authority of the Family Code. The trial court expressly stated that it was simply enforcing the parties' agreement. For this reason the trial court did not consider it necessary to complete the hearing required by statute before granting temporary support. TEX.FAM.CODE §§ 3.58(c)(2)[1] (spousal support), 11.11(b) (child support). It did not determine whether the spousal support ordered was "necessary and equitable", as required by TEX.FAM.CODE § 3.58(c), nor whether the temporary child support was "for the safety and welfare of the child", as required by TEX.FAM.CODE § 11.11(a). It did not take into account the guidelines and factors required for setting child support. TEX.FAM.CODE §§ 14.05–.055. It ordered support paid for MaryAnna's adult children without any statutory basis. It calculated the arrearage due without any evidentiary basis. Under these circumstances, the temporary support order was not enforceable by contempt.

■ MaryAnna concedes in this Court that the temporary support order was not authorized by statute but contends that it is nevertheless enforceable by contempt because Craig agreed to the order. The principal difficulty with MaryAnna's argument that Craig agreed to the temporary support order is that it was squarely rejected by the trial court. At a hearing on MaryAnna's motion for contempt, the trial court stated: "This [the temporary support order] was not an agreed order. It was an order ruled on by the court which took into consideration the impact of the prenuptial and postnuptial agreements upon the obli-

**1.** Section 3.59 of the Family Code also authorizes temporary spousal support but does not expressly require a hearing before support is ordered. The absence of a hearing requirement in section 3.59 does not avoid the requirement imposed by section 3.58, and support ordered under either section must be based upon a hearing.

gation to pay support." MaryAnna's argument that the order must have been agreed to because there was no other basis for its issuance is contradicted by the trial court's own statement. MaryAnna argues that Craig's agreement to the order is evidenced by his attorney's signature on it. However, there is nothing in the order to indicate that the attorney's signature constituted agreement to the order, the attorney later expressly denied that he was authorized to agree to the order, and the trial court stated that the signature "adds nothing to" the order and means only that the order "correctly reflects what the trial judge rendered ... and nothing more." Even assuming that the temporary support order could be enforced by contempt if Craig had agreed to it—and so overlooking other problems that might arise, for example, from its inclusion of certain amounts for adult children not entitled to support by statute—we conclude that Craig clearly did not agree to the order.

We need not address whether the trial court correctly interpreted the prenuptial agreement, or whether it erred in arriving at the amount of the monthly temporary support award, or in issuing its temporary support order. Because we conclude that the order was not authorized by statute, we conclude that it is not enforceable by contempt. Accordingly, writ of habeas corpus is granted, and relator is ordered discharged.

DOGGETT, J., joins in the judgment only.