**In re: Jerry BYROM, Relator.**

No. 12–09–00278–CV.

Court of Appeals of Texas,
Tyler.

July 14, 2010.

James W. Volberding, Tyler, Joe E. Shumate, for Relator.

Judge Guy W. Griffin, pro se.

Sheriff James Campbell, pro se.

David S. Bouschor II, Joseph F. Zellmer, for Real Party in Interest.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION ON REHEARING

JAMES T. WORTHEN, Chief Justice.

Real party in interest Roy P. Anderson filed a motion for rehearing, which is overruled. We withdraw our opinion and judgment of January 29, 2010, and substitute the following opinion and corresponding judgment in its place.

In this original habeas proceeding, Relator Jerry Byrom seeks relief from an order signed on June 16, 2009 finding him in contempt for violation of an order signed on December 8, 2008. The respondent is the Honorable Craig A. Fletcher, Judge of the County Court at Law, Cherokee County, Texas. The real parties in interest are Roy P. Anderson and David S. Bouschor II. We grant habeas corpus relief.

### PROCEDURAL HISTORY

Byrom's mother, Ruby Renee Byrom, died on February 5, 2005. Byrom was named in Mrs. Byrom's will as the sole

beneficiary and independent executor of her estate. The will was admitted to probate in the County Court at Law, Cherokee County (the "probate court"), and letters testamentary were issued to Byrom. The contempt order challenged here was signed in the probate proceeding as a result of a controversy between Byrom and Anderson, a creditor of Mrs. Byrom's estate.

### The Claim

On June 3, 2005, Anderson presented to Byrom and filed in the probate court an unsecured claim against Mrs. Byrom's estate in the sum of $31,992.75, which was based on two orders signed by the Denton County Probate Court. The orders arose out of a guardianship proceeding in which Byrom was appointed temporary guardian of Mrs. Byrom's person and Anderson was appointed temporary guardian of her estate. The first order authorized payment of $5,117.50 in temporary guardian's fees to Anderson and payment of $8,521.50 in attorney's fees to Bouschor for representing Anderson in the guardianship. The second order, signed after Mrs. Byrom's death, authorized payment of $2,748.75 in temporary guardian's fees to Anderson and $15,535.00 in attorney's fees to Bouschor for representing Anderson. Both orders stated that the fees were to be paid from the funds of Mrs. Byrom's estate within thirty days of the date of the order. However, the fees had not been paid at the time Anderson presented and filed his claim in the probate court. On June 9, 2005, Byrom's attorney informed Anderson that Byrom had rejected his claim.

### Byrom's Removal as Independent Executor

Approximately two years after Byrom's rejection of the claim, Anderson filed a motion to remove Byrom as independent executor or, alternatively, to require Byrom to post a bond, and to compel an accounting. Anderson alleged that, in trial court cause number 7773, he and Duane Coker, Mrs. Byrom's attorney/guardian ad litem, sued Byrom in his capacity as independent executor "for Authentication of Claims."[1] Anderson further alleged that a final order against Byrom was signed in that cause on April 3, 2007. As grounds for Byrom's removal, Anderson alleged, in part, that Byrom had (1) failed to pay claims in the due course of administration, (2) misapplied property committed to his care, (3) failed to comply with a final order of the court, signed on April 23, 2007,[2] (4) liquidated real property assets of the estate and made disbursements to himself in his individual capacity without payment to creditors of the estate, and (5) failed to file an inventory, appraisement, and list of claims within ninety days after qualification as required by Texas Probate Code sections 250 and 251.

The trial court held an evidentiary hearing on Anderson's motion. By order signed on September 10, 2008, the probate court removed Byrom as independent executor, but did not discharge him. The order awarded Anderson $14,034.10 for attorney's fees and expenses incurred in the removal proceeding, and ordered that Byrom pay this amount to Anderson within thirty days of the order. Additionally, the order included a finding that Mrs. Byrom's estate owned an interest in certain Denton County real property, which Byrom had converted to cash in the amount of $622,786.22. The order also directed Byrom to deposit estate property in that amount into the registry of the court with-

---

1. The record reflects that the Denton County Probate Court had awarded $27,551.93 in fees to Coker in the guardianship proceeding.

2. Neither the April 3 order or the April 23 order is part of the record in this proceeding.

in thirty days of the order. On Byrom's motion, the court signed a reformed order on December 8, 2008, reducing the required deposit to $85,000.00.

### Contempt Proceeding

Byrom did not comply with the December 8, 2008 order, and on March 20, 2009, Anderson filed a motion to enforce the order by contempt. He requested that Byrom be confined in jail for a period not to exceed six months for each violation until he deposited $85,000.00 into the court's registry and paid Anderson's fees and expenses incurred in the contempt proceeding. Byrom filed a written response stating that he was no longer the executor of Mrs. Byrom's estate and did not have access to any funds of the estate.

The trial court conducted an evidentiary hearing on Anderson's motion. Byrom testified that he had not complied with the court's order because he did not have $85,000.00, but acknowledged that he had received $622,786.22 as property belonging to the estate. His testimony was conflicting concerning whether he received the money before or after the December 8, 2008 order was signed. Anderson's attorney then proved up $7,058.17 in attorney's fees and expenses incurred in the contempt proceeding.

At the conclusion of the hearing, the trial court held Byrom in civil contempt after finding that he had failed to deposit $85,000.00 in estate funds into the court's registry as required by the December 8, 2008 order. Byrom was ordered to report to the court on July 2 at 9:00 a.m. at which time he would be remanded to the Cherokee County jail if he had not purged himself of the contempt by making the required deposit and paying Anderson's attorney's fees and expenses in the con-

tempt proceeding.[3] Byrom did not purge himself of the contempt and was confined in the Cherokee County jail.

### Habeas Proceedings

Byrom filed an application for writ of habeas corpus seeking bail, and the trial court signed an order setting his bond at $80,000.00. His attorney filed a bond, and Byrom was released from jail. He then amended his habeas application requesting that the court grant an evidentiary hearing and, after hearing evidence, order him released from confinement. The court conducted the requested hearing on September 2, 2009. Byrom testified that at the time the Denton County property was sold, he did not have notice of any claims he would owe out of the proceeds or any of the fees that he had been ordered to pay. He again insisted that he had none of the funds remaining. He also admitted that the day before he was held in contempt, he signed gift deeds conveying four tracts of land to his daughter. He testified, however, that he did not purchase the property with money from his mother's estate.

At the conclusion of the hearing, the trial court denied habeas relief, ordered Byrom taken into custody, and set his bond at $95,000.00 cash. Byrom then filed this original habeas proceeding, and also filed a motion for temporary relief, which was denied.

### AVAILABILITY OF HABEAS CORPUS

 Habeas corpus is available to review a contempt order entered by a lower court confining a contemnor. *Ex parte Gordon*, 584 S.W.2d 686, 687–88 (Tex.1979) (orig. proceeding). An original habeas proceeding is a collateral attack on a contempt judgment. *Ex parte Rohleder*, 424

---

**3.** Because we are granting habeas relief, we need not address the trial court's requirement that, to purge himself of the contempt, Byrom must pay Anderson's attorney's fees and expenses in the contempt proceeding in addition to making the required deposit.

S.W.2d 891, 892 (Tex.1967) (orig. proceeding); *In re Ragland*, 973 S.W.2d 769, 771 (Tex.App.-Tyler 1998, orig. proceeding). Its purpose is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully confined. *Ex parte Gordon*, 584 S.W.2d at 688.

■ A court will issue a writ of habeas corpus if the order underlying the contempt is void or if the contempt order itself is void. *See Ex parte Shaffer*, 649 S.W.2d 300, 301–02 (Tex.1983) (orig. proceeding); *Ex parte Gordon*, 584 S.W.2d at 688. The relator bears the burden of showing that the contempt order is void and not merely voidable. *In re Munks*, 263 S.W.3d 270, 272–73 (Tex.App.-Houston [1st Dist.] 2007, orig. proceeding). Until the relator has discharged his burden, the contempt order is presumed valid. *In re Parr*, 199 S.W.3d 457, 460 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding).

■■ A contempt order is void if it deprives the relator of liberty without due process of law or if it was beyond the power of the court to issue. *See In re Coppock*, 277 S.W.3d 417, 418 (Tex.2009) (orig. proceeding). An order of confinement for failure to pay a debt violates the Texas Constitution and therefore is beyond the power of the court to issue. *See In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (orig. proceeding). Consequently, such an order is void. *Id.*

### VALIDITY OF THE CONTEMPT ORDER

In his first issue, Byrom asserts that Anderson and Bouschor have "creatively used the procedures for civil contempt to collect their legal and accounting fees, rather than through well established debt collection procedures." He also makes reference to the attorney's fees awarded to Anderson by the probate court, which are ordered payable out of estate property. The authority Byrom cites pertains to the prohibition against imprisonment for debt found in article I, section 18 of the Texas Constitution and the prohibition against collection of attorney's fees by contempt. He contends that, in light of the cited authority, the contempt order is void.

Anderson responds that Byrom was held in contempt for failing to deposit $85,000.00 into the registry of the court as ordered on December 8, 2008, and that there is nothing in the record to indicate that the $85,000.00 was for the collection of attorney's fees.

### *Imprisonment for Debt*

■ As a general rule, a person who willfully disobeys a valid court order is guilty of contempt and subject to imprisonment for a prescribed period until he complies with the order. *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex.1993) (orig. proceeding). But the Texas Constitution provides that "[n]o person shall ever be imprisoned for debt." *See* TEX. CONST. art. I, § 18. This provision establishes that "[i]t is not the policy of the law [in Texas] to enforce the collection of mere civil debts by contempt proceedings." *Ex parte Britton*, 127 Tex. 85, 90, 92 S.W.2d 224, 227 (1936) (orig. proceeding). An order requiring payment of a debt may be enforced through legal processes like execution or attachment, but not by the imprisonment of the adjudicated debtor. *Ex parte Hall*, 854 S.W.2d at 658; *see also In re Nunu*, 960 S.W.2d 649, 650 (Tex.1997) (orig. proceeding) (reasoning that because a judgment awarding damages cannot be enforced by contempt, court cannot require payment of expenses incurred as means of purging contempt).

■ Not every obligation to pay money is a debt within the meaning of article I, section 18. *See Ex parte Davis*, 101 Tex. 607, 612, 111 S.W. 394, 396 (1908) (orig.

proceeding) ("There are many instances in the proceedings of the courts where the performance of an act may be enforced by imprisonment and would not come within the prohibition of the Constitution, although it might involve the payment of money."). For example, an obligation that is a legal duty arising out of the status of the parties is not a debt and therefore may be enforced by contempt. *See In re Henry,* 154 S.W.3d at 596 (holding that past due child support is not a debt); *Ex parte Gorena,* 595 S.W.2d 841, 846–47 (Tex.1979) (orig. proceeding) (holding that former husband was constructive trustee for portion of monthly retirement pay awarded to former wife in divorce decree; therefore obligation to deliver money to former wife was not "debt"). Similarly, criminal fines are not debts, and confinement for failure to pay criminal fines is not prohibited. *In re Henry,* 154 S.W.3d at 596 n. 1.

■ Generally, however, an obligation to pay money arising out of a contract is a debt within the meaning of article I, section 18. TEX. CONST. art. I, § 18 interp. commentary. Moreover, "[a]ll causes of action become debts when they are placed in the form of judgments...." *Id.; see also Ex parte Hall,* 854 S.W.2d at 658. And with few exceptions, none of which are applicable here, attorney's fees are debts and cannot be collected by contempt. *See Wallace v. Briggs,* 162 Tex. 485, 488–90, 348 S.W.2d 523, 525–26 (1961) (orig. proceeding); *Ex parte Dolenz,* 893 S.W.2d 677, 680–81 (Tex.App.-Dallas 1995, orig. proceeding).

***

4. For example, Byrom's motion to reform the original order removing Byrom as independent executor requested in part that the amount of the deposit, originally set at $622,786.22, be reduced because the previous order "embrace[d] a much broader portion of the Estate of Ruby Renee Byrom than is reasonably necessary to protect any litigant herein." Moreover, Anderson states in his response that the $85,000.00 deposit was re-

### The Contempt Order

■ Anderson contends that Byrom was held in contempt and confined for failure to comply with the respondent's December 8, 2008 order by depositing $85,000.00 in the court's registry. He points out that the order Byrom violated was a "court order made mandatory by [Texas Probate Code section] 149C(b)...." Because the order Byrom disobeyed was mandatory by statute, Anderson contends that contempt and confinement are permissible.

An order removing an independent executor must direct the disposition of the assets remaining in the name or under the control of the removed executor. TEX. PROB.CODE ANN. § 149C(b) (Vernon Supp. 2009). The order requiring the $85,000 deposit was signed in compliance with this section. However, Anderson has a judgment against Byrom as independent executor of Mrs. Byrom's estate. From our review of the record, it is clear that Anderson sought Byrom's removal as independent executor and filed his motion to enforce the December 8, 2008 order by contempt to assure that property of the estate would be available to satisfy his judgment against Byrom. Because Byrom is the sole beneficiary under the will, there are no other beneficiaries who would benefit from the $85,000.00 deposit. Therefore, it is also clear that the respondent required the deposit for Anderson's benefit.[4]

■ An order requiring a deposit of funds into the court's registry is not en-

quired pursuant to section 149C(b) of the Texas Probate Code and refers us to a subsequent order entered by the respondent, which contains the following finding:

"(8) By Order of this Court entered December 8, 2008, JERRY BYROM was ordered to deposit property of the Estate of RUBY RENEE BYROM in the amount of $85,000.00 in the Registry of the Court of Cherokee County,

forceable by contempt if any portion of the funds is for the payment of a debt. *See In re Wiese,* 1 S.W.3d 246, 251 (Tex.App.-Corpus Christi 1999, orig. proceeding) (contempt order void because portion of funds to be deposited in registry was attorney's fees that were part of turnover order); *Ex parte Roan,* 887 S.W.2d 462, 465 (Tex.App.-Dallas 1994, orig. proceeding) (order void where trial court conditioned coercive contempt upon payment of funds into registry and funds were ordered deposited for judgment creditors' benefit). Here, Anderson's judgment is against Byrom in his representative capacity and is based on the fee orders of the Denton County Probate Court. He also has been awarded attorney's fees and expenses incurred in various proceedings in the probate court that are payable from estate property. As we have previously stated, a judgment is a debt and cannot be collected by contempt. *Ex parte Hall,* 854 S.W.2d at 658. Additionally, the attorney's fees and expenses awarded to Anderson by the probate court are debts. *See Wallace v. Briggs,* 162 Tex. at 488-90, 348 S.W.2d at 525-26; *Ex parte Dolenz,* 893 S.W.2d at 680-81. Therefore, the only sums payable to Anderson out of estate property are for debts. Consequently, Byrom has been held in contempt for failure to deposit funds that will be used to pay debts. *See Ex parte Roan,* 887 S.W.2d at 465. Thus, the contempt order violates the constitutional prohibition against imprisonment for debt and is void. *See In re Henry,* 154 S.W.3d at 595. Because the contempt order is void, the order illegally restrains Byrom. *See In re Wiese,* 1 S.W.3d at 251; *Ex parte Roan,* 887 S.W.2d at 465.

### The Buller Cases

Anderson disagrees and calls our attention to the *Buller* cases. *See Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991) ("*Buller I* "); *Ex parte Buller,* 834 S.W.2d 622, 623-24 (Tex.App.-Beaumont 1992, orig. proceeding) ("*Buller II* "). He urges that the facts in *Buller II* and those presented in this case are indistinguishable and concludes that we should deny Byrom's habeas petition.

*Buller I* is an appeal from a turnover order directing Patricia Buller, independent executrix of her husband's estate, to deliver a specific amount of estate cash to the sheriff for levy in partial satisfaction of a judgment. *Buller I,* 806 S.W.2d at 224. In reviewing the order, the supreme court stated that once the cash was traced to Buller in her representative capacity, a presumption arose that those assets were in her possession. *Id.* at 226. The burden then shifted to Buller to account for the assets. *Id.* The court noted that Buller presented only scant documentation to support her testimony that she no longer had possession of the cash. *Id.* Ultimately, the court determined that "[c]learly the trial court was within its discretionary authority in disbelieving Mrs. Buller's unsubstantiated claim that [the] cash was spent...." *Id.* Specifically, the court opined that "simply asserting 'I spent it' is unacceptable." *Id.* at 227. Consequently, the court affirmed the portions of the turnover order that relate to our analysis in this case. *See id.*

Despite the supreme court's ruling, Buller refused to comply with the turnover order. As a result, the trial court held her in contempt and confined her. *See Buller II,* 834 S.W.2d at 624. She sought habeas relief arguing, in part, that her confinement violated the constitutional prohibition of imprisonment for debt. *Id.* at 626; *see also* TEX. CONST. art. I, § 18. The Beau-

Texas to be used to pay the judgments award-

ed Plaintiff [Anderson]."

mont court of appeals held to the contrary, relying on two cases it described as "compellingly persuasive." *Id.* at 626–27.

In the first case, the supreme court determined that a husband could be held in contempt and confined for refusing to obey an order to pay into the court's registry his wife's share of certain community property funds. *Ex parte Preston,* 162 Tex. 379, 381, 347 S.W.2d 938, 939 (1961). Preston argued, in part, that the sum to be paid constituted a debt to his wife and therefore he could not constitutionally be held in contempt and confined for his failure to deposit the funds. *Id.,* 162 Tex. at 382, 347 S.W.2d at 940; *see also* Tex. Const. art. I, § 18. The court observed that the money Preston was ordered to deposit rightfully belonged to his wife under the terms of the divorce decree. *Id.,* 162 Tex. at 384, 347 S.W.2d at 941. Thus, he was not a debtor of his wife, but a constructive trustee holding a portion of the assets awarded to her in the divorce decree. *Id.* In the court's view, there was "no question … about the right of the [trial] court to hold a trustee in contempt of court for willfully refusing to obey an order to pay over funds held in his hands to the one rightfully entitled thereto." *Id.*

In the second case, the supreme court held that a husband could be held in contempt and confined for refusing to surrender property to his former wife as ordered in the divorce decree. *Ex parte Gorena,* 595 S.W.2d at 846–47. Gorena was committed to jail for contempt for failing to pay his former wife monthly payments of a portion of his military retirement benefits. *Id.* at 843. In denying habeas relief, the supreme court concluded that Gorena held the unpaid funds as a trustee for his wife. *See id.* at 846–47. Therefore, he was not being imprisoned for debt. *See id.*

In short, the supreme court in Preston and Gorena held that the contemnor's re-

fusal to deliver the property of another to its rightful owner as ordered was punishable by contempt and confinement. In applying these two cases, the court stated in *Buller II* that

> [a] trustee or other fiduciary such as a legal representative or independent executrix may constitutionally be fined and jailed for contemptuously refusing to obey an order to turn over funds held in her hands and subject to her right of possession to a proper authority or entity that is lawfully and rightfully entitled to those funds for levy.

*Buller II,* 834 S.W.2d at 626. It then concluded that Buller, as independent executrix of her husband's estate, had a fiduciary relationship to the estate's creditors. *Id.* Because of this relationship, the court reasoned, her confinement was not constitutionally prohibited. *Id.* We do not read *Preston* and *Gorena* so broadly.

We first note that Buller was the independent executrix of her husband's estate and consequently "a holder of property of a judgment debtor[.]" *See Buller I,* 806 S.W.2d at 226. She was not a holder of property belonging to the judgment creditor that had sued her. *See id.; see also* Tex. Prob.Code Ann. § 37 (Vernon 2003) (estate of testate decedent vests immediately in devisees, but independent executor has right to possession of estate). Moreover, the holdings in *Preston* and *Gorena* do not turn on, and the court does not address, whether the contemnor was a fiduciary by virtue of his holding the property of another. The critical facts were that Preston and Gorena possessed the property of another but refused to deliver it to the rightful owner, despite being ordered to do so. And even if fiduciary duty had been the basis for the court's holdings in those cases, we have been unable to locate any Texas case holding that an independent executor has a fiduciary relation-

ship with estate creditors. Finally, the above quoted language from *Buller II* is, in substance, a determination that a fiduciary is not subject to the constitutional prohibition of imprisonment for debt. We do not reach the same conclusion from our reading of the cases cited in *Buller II* and other cases addressing the prohibition of imprisonment for debt.[5] Consequently, for the reasons we have discussed, we respectfully decline to follow *Buller II* here.[6]

### DISPOSITION

Because we have held that the contempt order is void and Byrom is illegally restrained, we *grant* Byrom's petition for writ of habeas corpus and order him discharged. Thus, Byrom's first issue is dispositive, and we need not address his remaining issues. *See* TEX.R.APP. P. 47.1. All pending motions are overruled as moot.

**5.** In *Buller I*, the dissent predicted that "[e]ven as to any estate assets which Buller has not spent, the turnover order will ultimately prove unenforceable. The Texas Bill of Rights prohibits the trial court from enforcing the turnover order by imprisonment.... In the present case, enforcement of the turnover order by imprisonment would fall squarely within the constitutional prohibition." *Buller I*, 806 S.W.2d at 229 (Mauzy, J., dissenting). In *Buller II*, Justice Burgess noted in his dissent that the trial court's order directed Buller to turn over a specific sum, which was "nothing more than telling her to pay the debt." In his view, Buller was entitled to the guarantee of article I, section 18, and could not be confined for refusing to deliver the funds. *Buller II*, 834 S.W.2d at 627–28 (Burgess, J., dissenting).

**6.** The court also held that the constitutional prohibition against imprisonment for debt does not apply "unless the contemn[o]r demonstrates inability to pay." *See Buller II*, 834 S.W.2d at 626 (citing *Pierce v. Vision Invs.*, 779 F.2d 302, 309 (5th Cir.1986) and *Ex parte Smyers*, 529 S.W.2d 769, 770 (Tex.1975)). These cases hold that a contempt order is not proper if the contemnor is unable to comply with the order he failed to obey. *See Pierce*, 779 F.2d at 310; *Smyers*, 529 S.W.2d at 769–70. According to the dissent in *Buller I*, the express language of the 1836 Republic of Texas Constitution required inability to pay, but this language has been included in subsequent state constitutions. *Buller I*, 806 S.W.2d at 229.