**AFFIRMED and Opinion Filed April 11, 2022**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-20-01087-CV**

**IN THE INTEREST OF B.R., A MINOR CHILD**

**On Appeal from the 469th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-54745-2016**

## MEMORANDUM OPINION

Before Justices Schenck, Molberg, and Pedersen, III
Opinion by Justice Schenck

A.R., ex-husband of O.R. and father of B.R., appeals a final decree of divorce.

In four issues, A.R. asserts the trial court erred in admitting the valuation opinions

of O.R.'s expert, in its division of the community estate, in ordering his possession

of and access to B.R. to be supervised, and in ordering him to pay child support in

the amount of $1,710 per month. We affirm. Because all issues are settled in law,

we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

A.R. and O.R. were married on December 18, 2004. One child, B.R., was

born to the marriage on July 23, 2010. During their marriage, A.R. and O.R.

acquired many assets including a primary residence, numerous rental properties, and various businesses.

O.R. initiated this divorce proceeding on August 29, 2016, alleging A.R. committed adultery and seeking sole managing conservatorship over B.R., as well as child support. On December 22, A.R. filed a counter petition for divorce. Both parties sought a disproportionate share of the parties' estate.

On December 19, 2016, the trial court held a hearing on temporary orders. On January 11, 2017, the trial court signed temporary orders which appointed A.R. and O.R. temporary managing conservators and made a preliminary allocation of the parties' estate as follows:

> To O.R., the vehicle in her possession and use and possession of real properties including (the marital residence), and three other local residences and various apartment units.

> To A.R., the vehicle in his possession and exclusive use and possession of Atica Nails, Inc., Alpha Design, Inc., and two salons in Europe.

In addition, the trial court ordered O.R. to account for the rental income and expenses from the properties, and A.R. to account for the income and expenses of Atica Nails, Alpha Design, and the two salons in Europe and to pay child support and provide medical insurance for B.R.

A.R. failed to comply with his accounting and child-support-payment obligations under the January 11 orders, claiming there was nothing to report as the businesses were inactive and that he earned no income and, thus, could not pay child

support. On August 16, 2017, the trial court signed an order holding A.R. in contempt for failing to make child-support payments and for failing to provide the accounting required by the January 11 orders.

Over the course of three days in September 2018, the trial court conducted a trial on the merits. During the trial, the trial court heard testimony concerning A.R.'s ownership of a business known as Atica Nails, Inc. ("Atica Nails"), with operations in the United States and Europe; that he had recently taken several trips in furtherance of that business; and that he routinely shields his income from detection and avoids paying income taxes in the United States. The Certified Public Accountant O.R. engaged to provide valuation opinions, opined, conservatively, that Atica Nails had a value ranging between $1,200,000 and $1,320,000. A.R. did not offer any controverting expert testimony and instead claimed the business no longer existed and had no value and asserted that his sole income was approximately $1,000 per month, from the delivery of auto parts to auto repair shops.

On March 3, 2019, the trial court issued a memorandum ruling[1] and, on June 2, an amended memorandum ruling. On June 3, the trial court held a hearing on a request for a temporary restraining order and issued a memorandum ruling requiring

---

[1] In this ruling, the trial court awarded two local properties to O.R. Before the final decree, A.R. violated the court's standing order prohibiting the sale of property during the pendency of the divorce and offered and sold these two local properties. The court ordered that the proceeds from the sales of the properties be deposited with a court-appointed receiver. In addition, during the pendency of the divorce, A.R. permitted a third local property to go into foreclosure. The court ordered that the proceeds from the foreclosure sale be deposited into the registry of the court.

A.R.'s possession of B.R. to be supervised. On December 14, 2020, the trial court signed the amended decree of divorce, which is the subject of this appeal. In that decree, the trial court ordered, in relevant part:

> that O.R. and A.R. are divorced and that the marriage between them is dissolved for the reason that A.R. has committed adultery.
>
> that A.R. has the right to supervised possession of B.R. on the first, third and fifth Saturdays of each month beginning a 10 a.m. until 2 p.m. the same day, and on Wednesdays beginning at 6 p.m. until 8 p.m. the same day.
>
> That B.R. shall continue to attend therapy.
>
> that A.R. pay to O.R. child support of $1,710 per month.
>
> that A.R. is awarded: all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, equipment, clothing, jewelry and other personal effects in his possession or subject to his sole control; all sums of cash in his possession or subject to his sole control; a 1998 Mitsubishi; a 2009 Range Rover; a 2008 Mazda; 100% ownership interest in Alpha Design, Inc., and Atica Nails, Inc.; and real property located within Denton County.
>
> that O.R. is awarded: all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, equipment, clothing, jewelry and other personal effects in her possession or subject to her sole control; all sums of cash in her possession or subject to her sole control; a 2008 Lincoln MKX motor vehicle; 100% ownership interest in Crystal Investment Property, LLC; real properties located in Dallas County; proceeds recovered from the foreclosure on one of the properties; and the remaining proceeds from the sale of two properties.
>
> that A.R. is to pay: any and all debts, charges, liabilities, and other obligations incurred solely by A.R.; the balance due on the promissory note for the vehicle awarded to A.R.; all encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to A.R.; balance due on and equity loan; $10,000 to O.R. for expert fees; and $25,314 to O.R. for rents ordered to be paid in the further temporary orders dated May 24, 2017.

that O.R. is to pay: any and all debts, charges, liabilities, and other obligations incurred solely by O.R.; the balance due on the promissory note for the vehicle awarded to O.R.; and all encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to O.R.

That various real properties are A.R. sole and separate property.

The court entered findings of fact and conclusions of law that are consistent with the final decree. This appeal followed.

DISCUSSION

## I. Expert Testimony

In his first issue, A.R. urges O.R.'s expert, Larry Settles, a Certified Public Accountant specializing in forensic investigative accounting and business valuation, was not qualified to opine as to the value of real estate and his testimony concerning the value of Atica Nails was not based on a reliable foundation. Thus, concludes A.R., the trial court erred in admitting Settles' opinions concerning same.

### A. Standard of Review

Expert testimony is admissible if (1) the expert is qualified, and (2) the testimony is relevant and based on a reliable foundation. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). The trial court's determination that these requirements are met is reviewed for abuse of discretion. *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Robinson*, 923 S.W.2d at 558.

Texas Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

There are many factors that a trial court may consider in making the threshold determination of admissibility under Rule 702. The factors a trial court will find helpful in determining whether the underlying theories or techniques of the proffered evidence is reliable will differ in each case. *Robinson*, 923 S.W.2d at 557. When, as here, the expert relies on experience and training rather than a particular methodology to reach his or her conclusions, reviewing courts determine whether there may be simply too great an analytical gap between the data and the opinion proffered for the opinion to be reliable. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998).

## B.    Value of Real Estate

Settles acknowledged, and the trial court recognized, that he is not an expert in real estate values and that he was not purporting to give expert opinions on the value of any real estate holdings of the parties. When the trial court admitted Settles' written report, the following exchange occurred between A.R.'s counsel and the trial court:

> [Counsel]: And, Judge, can we have - - make it clear on the record that even though the exhibit is admitted, it's for the limited purposes of

appraising the business, Atica Nails, as opposed to the value of any real estate?

[Trial Court]: I will note for the record that this witness has indicated that he is not an expert in real estate valuation and - - however, I don't know fully what is in Petitioner's Exhibit 1. I will note that for the record that he has indicated and conceded that he is not an expert in real estate values.

[Counsel]: And I think he also said that he's not here to offer an opinion as an expert on the value of real estate in this case.

[Trial Court]: That is my understanding as well.

From this exchange, it is apparent that the trial court did not consider Settles to be an expert on the value of real estate in this case, and that, notwithstanding the admission of his expert report, that she was not admitting or considering his conclusions concerning the value of any real estate holdings. Consequently, A.R.'s contention that the trial court permitted Settles to give expert opinion testimony as to the value of real estate is not supported by the record. Moreover, as to the report that was admitted into evidence, that contained, in part, Settles' opinions concerning the value of real estate, in a bench trial, such as the one here, we presume that the trial court, sitting as the fact finder, disregarded any improperly admitted evidence. *See Richard Nugent & CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 260 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Accordingly, we overrule A.R.'s first issue with respect to his complaint about Settles' valuation of real estate.

## C.    Business Valuation

A.R. acknowledges that Settles is qualified to give an opinion regarding the value of a business. A.R. contends that, in this case, Settles did not have sufficient data to form his opinion concerning the value of Atica Nails and instead filled in the gaps with assumptions.

The trial court, as gatekeeper, "must determine how the reliability of particular testimony is to be assessed." *Gammill*, 972 S.W.2d at 726. Rather than focus entirely on the reliability of the underlying technique used to generate the challenged opinion, as in *Robinson*, it is appropriate in cases like this to analyze whether the expert's opinion actually fits the facts of the case. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 235 (Tex. 2010). In other words, we determine whether there are any significant analytical gaps in the expert's opinion that undermine its reliability. *Id.* The court's ultimate task, however, is not to determine whether the expert's conclusions are correct, but rather whether the analysis the expert used to reach those conclusions is reliable and therefore admissible. *Gammill*, 972 S.W.2d at 728.

Settles is a Certified Public Accountant specializing in forensic accounting and business valuations. He indicated in his report that A.R.'s counsel would not cooperate or produce documents to aid in the valuation of the marital estate.[2] As to the information he relied upon to reach his conclusions, Settles identified

---

[2] Settles explained that in valuing a business he usually requests three years' tax returns of a business entity, current financial statements, and aged accounts receivable and payable. In this case, none were provided, and it was his understanding that Atica Nails did not file tax returns.

conversations with O.R. and her counsel, documents he received, extensive global research, and databases he subscribes to that give him a great deal of industry data.

The evidence presented at trial established Atica Nails was incorporated in Texas, with significant operations in Europe. Settles described the business of Atica Nails as primarily the production of nail products. In reaching his conclusion regarding the value of the business, Settles relied on several key data points including the number of global representatives promoting Atica Nails' products,[3] the number of international retailers selling Atica Nails' products, and the fact that A.R. was able to secure business loans, an indicator that, contrary to A.R.'s assertion the business no longer existed and had no value, the business was flourishing and ongoing.

Settles explained he searched for resellers of the products sold by Atica and reviewed three distributor agreements. Through his research, Settles was able to identify at least 38 distributors of Atica Nails products globally, and based on his experience and research, extrapolated that there would be at least 50 distributors globally with 8 salons per distributor. He explained this was a conservative projection. Sellers projected, based on industry data and his review of the terms of the distribution agreements, there to be $200 per month in product sales for each salon, providing total gross sales of $960,000 through retailers. He again explained

---

[3] Settles discovered various websites promoting Atica Nails' products.

that this was a conservative assessment. Then, based upon his research, he estimated there to be another $120,000 generated from online sales, for a total of approximately $1,100,000 in sales. This conclusion was further supported by Settles' review of an expense report created by A.R. in July 2016, which listed total expenses of $52,038.95 for the month, and review of industry data on profit margins, which led Settles to conclude expected sales to be at least $100,000 per month, which additionally and separately supports Settles' annual projection of $1,100,000 in sales, and his calculation of annual net income to be between $440,000 and $480,000. Based upon these sales and income projections, Settles valued Atica Nails, Inc. at $1,200,000 to $1,320,000.

While it is true Settles made some assumptions in reaching his conclusion as to the value of Atica Nails, due primarily to A.R.'s failure to cooperate in the valuation process, Settles' assumptions and extrapolations were based on, and supported by, his knowledge, experience, research and industry data. We conclude there was not too great an analytical gap between the data Settles was able to obtain and his valuation conclusion. *See Gammill*, 972 S.W.2d at 726. And, as Settles explained, while the amount of underlying data impacts the accuracy of the valuation, the valuation range, and the margin of error, one can still come up with the value. As *Gammill* informs, the correctness of the expert's conclusions is not the test for admissibility. *Gammill*, 972 S.W.2d at 728. Considering Settles' qualifications, his extensive research and industry data support, we conclude the trial

court did not abuse its discretion in allowing Settles to testify regarding the value of Atica Nails. We further note, A.R. had the opportunity to cross-examine Settles concerning his valuation of Atica Nails and to challenge same and did so at great length.

We overrule A.R.'s first issue.

## II. Division of Community Estate

In his second issue, A.R. urges the trial court awarded O.R. a disproportionate share of the marital assets and without justification. O.R. responds asserting A.R. received more than 50% of the marital assets. It appears the divergence in the parties' assessments of the property division hinges on their disagreement as to the value of Atica Nails, with O.R. urging it has a value of $1,200,000 to $1,320,000 and A.R. urging it has no value.

As an initial matter, we note that the trial court did not make any valuation findings. We must presume that the trial court made all the necessary findings to support its judgment. *See Wells v. Wells*, 251 S.W.3d 834, 838 (Tex. App.—Eastland 2008, no pet.).

### A. Standard of Review

A trial court has wide discretion in dividing the estate of the parties in divorce suits and may divide the property as it deems right and just. *See* TEX. FAM. CODE ANN. § 7.001; *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.). We review a trial court's division of marital property under the abuse

of discretion standard and indulge every reasonable presumption in favor of the trial court's determination. *Fellows v. Fellows*, No. 05-98-00618-CV, 2000 WL 1073609, at *1 (Tex. App.—Dallas July 24, 2000, no pet.).

## B. Presumption Trial Court Credited Settles' Valuation of Atica Nails

The record reflects that at the time of the divorce, the bulk of the community estate consisted of the couple's residence, several rental properties, and businesses. As stated above, the trial court awarded each party all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, equipment, clothing, jewelry and other personal effects in their possession or subject to their sole control; all sums of cash in their possession or subject to their sole control; and certain vehicles. Additionally, the trial court awarded A.R. 100% ownership interest in Alpha Design and Atica Nails, and real property located in Denton County and awarded O.R. real properties located in Dallas County; proceeds recovered from the foreclosure of a property; and the remaining proceeds from the sale of two properties.

Presuming the trial court found Settles' valuation of Atica Nails to be credible, in addition to being awarded property and cash in his possession, and certain vehicles, A.R. was awarded assets valued at $1,865,000 to $1,970,000.[4] In addition to being awarded property and cash in her possession, and a vehicle, O.R. was

---

[4] This range is comprised of $1,200,000 to $1,320,000 for Atica Nails and $650,000 for Denton County property, the value A.R. attributed to this property. We note that on his inventory and appraisement, A.R. indicated there is a $308,000 mortgage and $440,00 in liens on the Denton County property.

awarded assets valued by A.R. in his inventory and appraisement at $1,242,400. Thus, presuming the trial court credited Settles' valuation of Atica Nails, A.R. cannot establish he received a share of the marital estate that was less than the share O.R. received.

**C. Factors the Court May Consider**

Moreover, and additionally, the trial court need not divide the estate equally. *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981). It may order an unequal division of the marital estate when a reasonable basis exists for doing so. *Id.* at 696. The court may consider many factors in making an unequal division of property. These include the spouses' capacities and abilities; benefits which the party not at fault would have derived from continuation of the marriage; business opportunities; education; relative physical conditions; relative financial condition and obligations; disparity of ages; size of separate estates; the nature of the property; and disparities in earning capacities and incomes. *Id.* at 699. In addition, when a divorce is granted on a fault basis, the trial court may consider the fault of one spouse in breaking up the marriage when making a property division. *Young v. Young*, 609 S.W.2d 758, 761 (Tex. 1980). The circumstances of each marriage dictate what factors should be considered in division of the marital estate. *Id.*

In the court's findings of fact and conclusions of law, the trial court specifically found the allegations against A.R. of adultery had been proven by a preponderance of the evidence and that A.R. was at fault in the dissolution of the

–13–

marriage. In addition, A.R.'s business acumen and connections, his demonstrated earning capacity, and the size of his separate estate support the division of property even if the trial court discounted Settles' valuation of Atica Nails. We overrule A.R.'s second issue.

## III. Possession

In his third issue, A.R. urges the trial court erred in awarding him less than the standard possession set forth in the Texas Family Code.

### A. Standard of Review

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." FAM. § 153.002. It is well-settled that the trial court has broad discretion in determining the best interests of a child in family law matters. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). This rule flows from the observation that the trial court is typically in the best position to observe the demeanor and personalities of the witnesses and to understand influences on the family dynamic that cannot be discerned by mere reference to the record. *In re N.A.S.*, 100 S.W.3d 670, 673 (Tex. App.—Dallas 2003, no pet.).

Accordingly, we review a trial court's best interest determination for an abuse of discretion. *Gillespie*, 644 S.W.2d at 451. A trial court abuses its discretion in this context when it acts arbitrarily, unreasonably, or without reference to any

guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

**B. Applicable Law**

The Texas Family Code provides a standard possession order for parents who have been designated as joint managing conservators and who reside 100 miles or less apart, giving them the following right to possession: "(1) on weekends throughout the year beginning at 6 p.m. on the first, third, and fifth Friday of each month and ending at 6 p.m. on the following Sunday; and (2) on Thursdays of each week during the regular school term beginning at 6 p.m. and ending at 8 p.m., unless the court finds that visitation under this subdivision is not in the best interest of the child." FAM. § 153.312. There is a rebuttable presumption that a standard possession order is in the best interest of a child and provides reasonable minimum possession of a child for a parent named as a joint managing conservator. FAM. § 153.252.

When deviating from the standard possession order, a trial court may consider (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and the parent named possessory conservator; and (3) any other relevant factor. FAM. § 153.256. The trial court is required to consider the commission of family violence in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator. *Id.* § 153.004(c). A trial court "may not

allow" a parent to have access to a child when it is shown that there is a history of family violence, unless the trial court (1) finds that awarding the parent access to the child would not endanger the child's physical health or emotional welfare and would be in the best interest of the child and (2) renders a possession order that is designed to protect the safety and well-being of the child and any other person who has been a victim of family violence committed by the parent. *Id.* § 153.004(d). That order may require that the periods of access be continuously supervised by an entity or person chosen by the court. *Id.* § 153.004(d)(2)(A). It is a "rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised visitation with the child if credible evidence is presented of a history or pattern of [physical abuse] by that parent directed against the other parent." *Id.* § 153.004(e).

### C. Application of the Law to the Facts

The evidence presented at trial established A.R. had committed family violence against O.R. and that the trial court had issued protective orders on the applications of O.R., requesting protective orders for B.R., during the pendency of the case. The protective orders were admitted into evidence. In the protective orders, the trial court found "that there is a clear and present danger of family violence unless [A.R.] is ordered to do or refrain from doing certain acts," including committing abuse of a child of the family or household. In addition, O.R. testified that when B.R. was born, A.R. was indifferent to the child, rarely attended doctor's appointments, did not pick B.R. up from school until the pendency of the divorce

proceeding, rarely attended B.R.'s extracurricular activities, and failed to recognize that B.R.'s suffered an allergic reaction to something he was exposed to while in his possession. A.R. admitted while testifying at trial that he was supposed to pick up B.R. from school that day and did not do so. Apparently, he made no alternative arrangements, assuming O.R. would anticipate the need to have someone there to retrieve him.

In light of such evidence, we conclude the trial court reasonably exercised its discretion in determining that the best interest of B.R. would be served by requiring supervised possession. We overrule A.R.'s third issue.

## IV.    Child Support

In his final issue, A.R. asserts the trial court erred in ordering him to pay $1,710 per month in child support. A.R. contends the unimpeached testimony at trial established that his monthly income was nowhere near the amount necessary to justify the obligation imposed.

**A. Standard of Review**

A trial court has discretion to set child support within the parameters provided by the Texas Family Code. *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993); *see also* FAM. §§ 154.121–.123. A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford*, 801 S.W.2d at 109. We review the evidence in the light most favorable to the order and indulge every legal presumption in favor of the trial court's ruling. *In re K.M.B.*, 606 S.W.3d 889, 890 (Tex. App.—Dallas 2020, no pet.). If some probative and substantive evidence supports the trial court's order, there is no abuse of discretion. *Id.*

**B. Applicable Law**

In child support decisions, the "paramount guiding principle" of the trial court should always be the best interest of the child. *See Rodriguez,* 860 S.W.2d at 417 n. 3. The child support guidelines in chapter 154 of the family code are intended to guide the court in determining an equitable amount of child support. FAM. § 154.121. The trial court is to calculate net resources for the purpose of determining child support liability as proscribed by chapter 154 of the family code. FAM. § 154.062.

The law has long recognized parents have a legal duty to support their children during their minority. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (per curiam); *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993); *Eggemeyer v.*

*Eggemeyer*, 554 S.W.2d 137, 138 (Tex. 1977). A parent who is qualified to obtain gainful employment cannot evade his or her child support obligation by voluntarily remaining unemployed or underemployed. *See Eggemeyer v. Eggemeyer*, 535 S.W.2d 425, 427–28 (Tex. App.—Austin 1976), *aff'd,* 554 S.W.2d 137 (Tex. 1977). Concurrently, the court must consider a parent's right to pursue his or her own happiness, with a parent's duty to support and provide for his or her child. *Iliff v. Iliff*, 339 S.W.3d 74, 81–82 (Tex. 2011). The court must engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings. *Id.* at 82. Once the obligor has offered proof of his or her current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed. *Id.* The burden then shifts to the obligor, if necessary, to offer evidence in rebuttal. *Id.*

### C. Application of the Law to the Facts

A.R. urges his trial testimony about his monthly income being approximately $1,000 was uncontroverted, but the record before us establishes otherwise, and it is well settled that the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony and is free to resolve any inconsistencies. *Iliff*, 339 S.W.3d at 83.

At trial, O.R. provided detailed testimony about A.R.'s operation of Atica Nails and about his shielding income from detection, including dealing only in cash and utilizing bank accounts in the names of distributors to facilitate transactions.

–19–

She testified about A.R.'s frequent travel to Europe, confirmed by Delta Airline records, to further his ongoing business interests, and about warehouses containing products worth approximately $1,000,000. Settles testified his assessment of Atica Nails' value was conservative and explained the basis for his conclusion, contrary to A.R.'s assertion, that the business was in fact ongoing. O.R. testified that A.R. receives monthly rental income of at least $2,500 from the lease of two apartments. In addition, the court heard testimony about the parties' lavish lifestyles.

By ordering A.R. to pay $1,710 per month in child support, it is evident the trial court, as the sole judge of the credibility of the witnesses in this bench trial, weighed the evidence and credited the testimony of O.R. and her expert over that of A.R. *See Murff*, 615 S.W.2d at 700. Moreover, even if the trial court credited A.R.'s testimony concerning his current income, given his admitted business experience and skills that transcend his current claimed employment,[5] the trial court could have concluded that A.R. is intentionally underemployed and applied the child support guidelines to A.R.'s earning potential. FAM. § 154.066(a). We conclude the trial court did not abuse its discretion in its child support determination. We overrule A.R.'s fourth issue.

---

[5] A.R. has created and operated his own business with international ties, has extensive experience managing a portfolio of real estate investment properties, previously worked for an engineering firm, and worked as a middleman brokering transactions with his foreign language capabilities.

## CONCLUSION

We affirm the amended final decree of divorce.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

201087F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF B.R., A MINOR CHILD

No. 05-20-01087-CV

On Appeal from the 469th Judicial District Court, Collin County, Texas Trial Court Cause No. 469-54745-2016.
Opinion delivered by Justice Schenck. Justices Molberg and Pedersen, III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee recover her costs of this appeal from appellant.

Judgment entered this 11th day of April 2022.