**Opinion issued July 23, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00244-CV

———————————

**RANDY MARK SYKES, Appellant**

**V.**

**LESLIE KAREN SYKES, Appellee**

On Appeal from the 361st District Court
Brazos County, Texas[1]
Trial Court Case No. 20-002505-CVD-361

## MEMORANDUM OPINION

---

[1] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal to this Court. *See* Misc. Docket No. 23–9017 (Tex. Mar. 21, 2023); *see also* TEX. GOV'T CODE ANN. § 73.001 (authorizing transfer of cases ); TEX. R. APP. P. 41.3 ("In cases transferred by the Supreme Court from one court of appeals to another, the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court . . . .").

Appellant, Randy Mark Sykes ("Mark"), challenges the trial court's final divorce decree, entered after a bench trial, in his suit for divorce against appellee, Leslie Karen Sykes ("Karen"). In his sole issue, Mark contends that the trial court erred by ordering that a loan repayment obligation be enforceable by contempt.

We modify the final divorce decree and affirm as modified.

## Background

In his second amended petition for divorce, Mark alleged that he and Karen married in 2014 and separated in July 2019. According to Mark, their marriage had become insupportable. As to the division of the marital estate, Mark requested that the trial court "divide the estate . . . in a manner that the [c]ourt deem[ed] just and right, as provided by law." In her second amended counterpetition for divorce, Karen alleged the same ground for divorce as Mark. Karen also stated her belief that she and Mark would "enter into an agreement for the division of the[] estate." And if "such an agreement [was] made," Karen requested that the trial court "approve the agreement and divide th[e] estate in a manner consistent with the agreement." Alternatively, Karen requested that the trial court "divide the[] estate in a manner that the court deem[ed] just and right, as provided by law."

Despite their efforts, Mark and Karen were unable to reach an agreement about the division of the marital estate. They participated in a trial before the

2

associate trial court on their disputed issues, and the associate trial court issued a ruling. Randy then requested that the trial court hold a trial de novo on those issues.

The trial court held a new trial, after which it informed the parties that it agreed with the associate trial court's property division. At a status hearing that took place before the trial court signed the final divorce decree, Mark objected to a provision in the proposed decree that made punishable by contempt any failure by him to make the required payments on a loan obligation attached to Karen's retirement account (the "retirement account debt"). Specifically, Mark asserted that the provision in the proposed decree violated Texas Constitution article I, section 18.[2] The trial court sustained Mark's objection and ordered that the contempt language be stricken from the final divorce decree, but the language was not removed, and the trial court signed the final divorce decree containing the contempt language, as follows:

> P-6. [Mark] is ordered to pay the balance of [the retirement account debt] in the amount of $31,701.00 in installment payments of $960.84 beginning November 1, 2021, directly to [Karen], as a judgment being enforceable by contempt and all other remedies available at law and equity.

Mark timely filed a motion for new trial, in which he argued, among other things, that "[t]he trial court erred by ordering [him] to pay the balance of [the retirement account debt] . . . as a judgment being enforceable by contempt" because "[t]he failure to pay a debt is not enforceable by contempt." Mark's motion for new

---

[2] *See* TEX. CONST. art. I, § 18 ("No person shall ever be imprisoned for debt.").

3

trial was overruled by operation of law. Mark also filed a request for findings of fact and conclusions of law and a notice of past-due findings of fact and conclusions of law. The trial court made findings of fact and conclusions of law, but it did not address the language contained in the final divorce decree that made a failure by Mark to pay the retirement account debt punishable by contempt.

**Jurisdiction**

As an initial matter, Karen, in her appellee's brief, Karen argues that Mark's constitutional claim is not ripe for appellate review because without an order or other evidence that Mark has been held in contempt under the challenged provision of the final divorce decree, a ruling by this Court would be an impermissible advisory opinion.

"[C]ourts always have jurisdiction to determine their own jurisdiction," and "[a]ppellate jurisdiction is never presumed." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 146 n.14 (Tex. 2012) (internal quotations omitted); *Florance v. State*, 352 S.W.3d 867, 871 (Tex. App.—Dallas 2011, no pet.); *see also Royal Indep. Sch. Dist. v. Ragsdale*, 273 S.W.3d 759, 763 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (jurisdiction fundamental in nature and cannot be ignored). The ripeness doctrine prohibits suits involving "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001). An issue is ripe for decision when at the time a suit is filed

4

the facts are sufficiently developed "so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000). As an element of subject matter jurisdiction, ripeness may be raised for the first time on appeal. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Whether a controversy is ripe for appellate review is a legal issue that we review de novo. *See id.*

Karen asserts that this Court may not issue an advisory opinion on the validity of a potential contempt finding, pointing out that almost all the courts that have addressed the constitutional issue raised here by Mark have done so in the context of an application for writ of habeas corpus. *See, e.g.*, *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (orig. proceeding); *In re Kinney*, No. 05-14-00159-CV, 2014 WL 1414280, at \*1, \*3 (Tex. App.—Dallas, Mar. 25, 2014, orig. proceeding) (mem. op.); *In re White*, No. 12-08-00214-CV, 2009 WL 1153396, at \*2–3 (Tex. App.—Tyler Apr. 30, 2009, orig. proceeding) (mem. op.); *but see Shumate v. Shumate*, 310 S.W.3d 149, 152–53 (Tex. App.—Amarillo 2010, no pet.) (affirming summary judgment denying request for enforcement by contempt). But "[h]abeas corpus is an extraordinary remedy and is available only when there is no other adequate remedy at law" and thus "may not be used to assert claims that could have been asserted on direct appeal." *Ex parte Cruzata*, 220 S.W.3d 518, 520 (Tex. Crim. App. 2007); *see also Purchase v. State*, No. 01-07-00738-CR, 2008 WL 596848, at \*4

(Tex. App.—Houston [1st Dist.] Mar. 6, 2008, pet. ref'd) (mem. op., not designated for publication). Here, unlike the habeas applicants in the cases relied on by Karen, Mark has an adequate remedy by appeal. He has presented his issue challenging the validity of the final divorce decree's contempt provision to the trial court and obtained a ruling on it, which preserved it for appellate review. *See* TEX. R. APP. P. 33.1(a), (b).

Karen also relies on *In re Kuster*, in which the trial court held the relator seeking mandamus relief in contempt before then vacating its order. 363 S.W.3d 287, 289 (Tex. App.—Amarillo 2012, orig. proceeding). There, the court of appeals concluded that mandamus relief was unavailable because the relator had failed to show that the contempt order from which she sought relief was still in effect. *Id.* at 292. Further, the appellate court considered the threat that the relator could be incarcerated in the future if the trial court reinstated its contempt order to be "an event far too speculative to serve as a basis" to grant habeas corpus relief.[3] *Id.*

Here, we are asked to consider whether a provision in an existing final divorce decree is constitutionally infirm, not, as the Amarillo court of appeals considered in *In re Kuster*, whether a possible future action would be unlawful. We have the authority to interpret judgments and to modify them if necessary to make them

---

[3]     In a single sentence in her petition for writ of mandamus, the relator "alternatively s[ought] habeas corpus relief." *In re Kuster*, 363 S.W.3d 287, 291 (Tex. App.— Amarillo 2012, orig. proceeding).

consistent with applicable law. *See* TEX. R. APP. P. 43.2(b); *see, e.g.*, *Kennard Law, PC v. Patton*, No. 01-22-00305-CV, 2023 WL 2697890, at *6 (Tex. App.—Houston [1st Dist.] May 17, 2022, no pet.) (mem. op.) (modifying dismissal for want of prosecution from "with prejudice" to "without prejudice"); *J.R. Richard Enters., Inc. v. Niz*, No. 01-20-00124-CV, 2020 WL 7391710, at *4–5 (Tex. App.—Houston [1st Dist.] Dec. 17, 2020, no pet.) (mem. op.) (modifying judgment in accordance with evidence to add damages on breach of contract claim and award attorney's fees in amount proven as matter of law.).

Based on the foregoing, we conclude that Mark's constitutional issue is ripe for adjudication, and we hold that we have jurisdiction over this appeal.

**Constitutionality of Enforcement by Contempt**

In his sole issue, Mark argues that the trial court erred by making the final divorce decree's provision requiring him to pay the retirement account debt enforceable by contempt because it violates the Texas Constitution.

We review an issue involving the interpretation of a divorce decree de novo. *See Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003); *Messier v. Messier*, 458 S.W.3d 155, 163 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Generally, a person who willfully disobeys a valid court order may be held in contempt and is subject to punishment by imprisonment for a prescribed period of time (criminal contempt) and may be imprisoned until he complies with the order

7

(civil contempt). *See Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993); *In re McLaurin*, 467 S.W.3d 561, 564 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding); *see generally In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011) (discussing distinction between civil contempt and criminal contempt). The Texas Constitution, though, provides that "[n]o person shall ever be imprisoned for debt." TEX. CONST. art. I, § 18. Thus, "the failure to comply with an order to pay a 'debt' is not contempt punishable by imprisonment." *Ex parte Hall*, 854 S.W.2d at 658; *In re McLaurin*, 467 S.W.3d at 564; *see also Tucker v. Thomas*, 419 S.W.3d 292, 297 (Tex. 2013) (difference between judgment for attorney's fees characterized as debt and award of attorney's fees characterized as additional child support was significant because Texas Constitution prohibited trial court from confining person under contempt power as means of enforcing judgment for debt, whereas contempt was available to enforce requirement to pay attorney's fees related to child support enforcement proceeding because it is viewed as legal duty and not considered debt). An adjudicated debt "may be enforced by other legal processes, such as execution or attachment of property, but not by imprisonment of the adjudicated debtor." *In re Nunu*, 960 S.W.2d 649, 650 (Tex. 1997); *In re McLaurin*, 467 S.W.3d at 564; *see also Ex parte Hall*, 854 S.W.2d at 658.

A trial court may enforce a payment provision by contempt if it finds that the "property at issue currently exists and it awards that property as part of the

8

community estate's division." *In re Henry*, 154 S.W.3d at 597. Under those circumstances, "the contemnor is not indebted to the other party, but becomes a constructive trustee who holds that party's assets." *Id.* But if the trial court did not identify in the final divorce decree the funding source to be used to pay a debt or specify that existing funds were available to pay the debt, the court may not enforce the order to pay a debt by confinement for contempt. *Shumate*, 310 S.W.3d at 153; *see also* TEX. FAM. CODE ANN. § 9.012(b) (court "may not enforce by contempt an award in a decree of divorce or annulment of a sum of money payable in a lump sum or in future installment payments in the nature of debt, except for: (1) a sum of money in existence at the time the decree was rendered; or (2) a matured right to future payments as provided by [s]ection 9.011.").

Here, in the final divorce decree, the trial court neither identified a funding source to be used to pay the debt nor specified that existing funds were available to pay the debt. As a result, we hold that the provision in the decree requiring Mark to pay the retirement account debt enforceable by contempt violates the Texas Constitution's prohibition against imprisonment for a debt. *See* TEX. CONST. art. I, § 18.

We sustain Mark's sole issue.

## Modification of Final Divorce Decree

We may modify a trial court's final divorce decree to make it consistent with the law. *See* TEX. R. APP. P. 43.2(b); *see, e.g.*, *Kennard Law, PC*, 2023 WL 2697890, at *6; *J.R. Richard Enters.*, 2020 WL 7391710, at *5. Thus, we modify paragraph P-6 of the trial court's final divorce decree by deleting the phrase "by contempt and all other remedies available at law and equity" and replacing it with the phrase "by all remedies available at law and equity except imprisonment for contempt."

## Conclusion

We modify the final divorce decree of the trial court and affirm as modified.


Julie Countiss
Justice

Panel consists of Justices Goodman, Countiss, and Farris.